and Michelle DeCristina. Charles Auslander is here for you. Good morning and may it please the court. My name is Charles Auslander. I'm here with Ben Cuney on behalf of Appellant David Efron. This case is about a subject matter jurisdiction dismissal under the Rooker-Feldman doctrine. We believe that the case should be reversed, that there is subject matter jurisdiction in the district court. Mr. Efron was and is being injured by a civil rights violation and conspiracy to commit that violation. That happened 20 years ago. He's essentially challenging an alimony award 20 years ago. And so aren't these sorts of matrimonial matters and alimony matters, they're traditionally relegated to state court jurisdiction? Why is this case in federal court? Your Honor, it's in federal court because it's been filed as a 42 U.S.C. 1983 civil rights violation because the argument here is that there was a quid pro quo arrangement preceding the traditional judicial process in which there was essentially a decision made, a conclusion made in advance. So what would his damages be? He's seeking repayment of the alimony that he's paid because it was procured by fraud and corruption? Is that what he's seeking? No, Your Honor. He wants the alimony money back, right? No, Your Honor. We're not seeking to vacate the judgment. What damages is he seeking? He wants repayment of that alimony he's paid, right? No, Your Honor. That's what you allege in paragraph 87. The scheme continues to the present day and you're seeking basically money ostensibly owed to Candelario based on Judge Aponte's corruptly procured rulings. Yes, Your Honor, but particularly focusing on paragraph 59 of the complaint, we are not seeking to vacate the judgment and to prevent the stream of $50,000 payments on the advance payments on the marital assets. Rather, we are pursuing a claim that seeks to defeat, really it's a textured answer, two layers. One is to directly respond to this. We're trying to defeat independent suits that are being brought based upon this decision. But you're in essence saying in paragraph 66, you're saying, until Efron's due process rights are restored by the abrogation of the Aponte decision, Candelario and Pirro will continue to have free reign to use the corrupt orders in that case to enlist the courts of Florida and Puerto Rico as unwitting co-conspirators in their illegal scheme. So in essence, you want us to abrogate the orders that were entered in Puerto Rico? Your Honor, we want the court to allow this conspiracy suit claim to go forward, this civil rights claim to go forward, to abrogate the effect, and the only way we can do that is not to vacate. Do you allege any injuries independent of the state court judgment? Yes, we do, because paragraph 59, for example, there really are two layers to that. One is, and we did not get to a 12B6 issue, but a 1983 action does not require a demonstration. We allege compensatory damages in paragraphs 59 and 60, but we're not obliged to identify compensatory damages. We have, we believe we have sufficiently, because assets are being attached everywhere. Mr. Efron's assets are being attached, and he's having to fight and dispute. But if all of that depends on this particular order no longer being in effect, it seems like what you're asking us to do is make that order not be in effect, because if you were to get a judgment, really, that just said his due process rights were violated, that still wouldn't abrogate the order, and if the order is still out there, the decision is still out there, then you continue to have the injuries that you're complaining of. Well, we may continue to have the injuries we complain of, Your Honor, but we would be entitled through this vehicle to compensation for them. We know we cannot abrogate, we cannot abrogate in the sense of vacating that order. That's the Bair v. Campbell decision, in the sense that, in really the direct sense. Go with that. I'm sorry. Yes. I'll confess that this is about as close to the line as I think that you can get to, Bair, but at least initially, my view is that what you're really seeking is to undo the judgment, not to complain about due process violations that happened apart from that judgment. I'll start, and I usually don't do this with an unserious answer, that it's entertaining to be before the author without having to get back to 1789. Judge Wilson, I know you were on the panel as well, of course. One can say it's close to the line, but, Your Honor, the Bair decision clearly states, and actually in some sense it's more within the line, because what Bair is talking about is falsified and coerced information as the basis for the proceedings and decisions. But then the court goes on to say that if money damages are sought for constitutional violations, that is, and I'm paraphrasing, that is discreet from the seeking to vacate the judgment. But in Bair itself it says, quote, the injury must be caused by the judgment itself, period. And when I look at the complaint in question here, all these claims really arise, whether the brokerage accounts are being attacked, they all stem from the fact that there's this order out there from Puerto Rico that has been now domesticated, I assume, in Florida, and as a result of it the ex-wife is seeking to get the money that she's owed under the Puerto Rican order. But that is not a Rooker-Feldman issue in the sense that we are allowed to say that there was a, without vacating that order, and at this stage we haven't gotten to causation, damages, issues, all these issues. And bearing in mind again that the conspiracy to violate due process rights, in and of itself, Your Honor, under 1983 case law, would authorize an order of nominal damages. But you're almost trying to get around the Rooker-Feldman and you're collaterally attacking this foreign judgment by claiming, making this fraud exception or this conspiracy exception, which I don't know where that exists. We would be coming up with that whole cloth. But we don't, and Your Honor, I think it's fair to say that we shouldn't be labeling it an exception because really the cases, inclusive of Bair v. Campbell, are talking about essentially what amounts to fraud extrinsic to the judicial process, which is really just a violation of civil rights. That's what happened, a violation of procedural due process in Bair, and that's what we're claiming here too. In Bair, the plaintiff has to live with the fact, as we do, that the custody decision is not going to be overturned. Nonetheless, there is a valid, discreet, and separate and distinct claim that is not a, we may have issues down the road with. So you're seeking, your cause of action here is a conspiracy to violate this due process, your client's due process rights. My question is, why couldn't you raise that in the Puerto Rican courts? Well, first off . . . You've had 16 years of opportunity to do that. There's no exhaustion requirement. There hasn't been a latches determination here, and this . . . So you have had an opportunity to raise this very claim in the Puerto Rican judicial system. I would say that there's not been such an opportunity, Your Honor. Why not? Well, because the arguments made there are always, as the complaint alleges, are under the shadow of the valid decision. So we're bringing a civil rights claim in federal court, which is an independent and freestanding claim. Of course, in some sense, counteract by trying to recover not the alimony payments, not the $50,000 stream, we know we can't do that, but to demonstrate that we have been injured by a quid pro quo arrangement that resulted in that decision. And you can't raise that in the Puerto Rican judicial system? You can't raise that argument, that claim? Your Honor, maybe we could, but under Rooker-Feldman, you're allowed to have companion proceedings as long as you don't seek to . . . The federal civil rights action, that claim is not reverse nullified by the fact that you could have brought a state court claim. And so . . . The problem is, I think Judge Legault already read this, but paragraph 66 of your complaint says, until Efron's due process rights are restored by the abrogation of the Aponte decision, et cetera, et cetera. I mean, it seems that that's pretty clearly what the lawsuit is seeking. Well, there's always things in crafting, Your Honor, and as we argued in the brief, two points. One is, it's the effective abrogation. In other words, if we are able to prove through a civil rights violation that this conspiracy took place, that this procedural due process deprivation took place, then we have an adequate forum to counteract the . . . perhaps abrogate the effect, not abrogate the decision. And that really brings us back to Bayer v. Campbell, because that's precisely what was found to pass muster under Rooker-Feldman in Bayer v. Campbell. All right, but everything that you . . . All these counts stem from the Aponte decision or the orders that were entered in Puerto Rico, and that's why you say that . . . I mean, I just don't see . . . As alleged in the complaint, the scheme continues to the present day based on the corruptly procured rulings. That's correct. There's no question . . . I mean, all the monies that you're claiming your client is being deprived of all stem from this underlying decision in Puerto Rico. It doesn't actually, Your Honor, and this is where I see I've run out of time, but to answer your question, without vacating that decision, a federal court can review it to see that what it's talking about is a stream of advance payment of marital assets, not non-marital assets. Let's take this to its logical conclusion. What you want is for repayment of monies that have been taken from your client, but those monies have been lawfully taken based on an underlying state court judgment. Your Honor . . . Have they been taken other . . . Has a court taken them based on this underlying court judgment that was entered in Puerto Rico? Your Honor, presumably yes, but what we've alleged is that . . . If a federal court . . . If we sent this back to a district court judge who said to his client that the monies have to be returned, we would, in essence, be vacating or abrogating the underlying Puerto Rican judgment. Your Honor, we're not asking for the return of those monies. We're not seeking to trace marital asset payments. No, but if you're asking for $50 from this account that was taken as a result of the underlying judgment . . . Or defense expenses, for example, Your Honor. We could have . . . There can be . . . I'm assuming that attorney's fees have had to be paid as well, and that probably stems from the underlying court judgment as well. Actually, I don't really know that that statement is accurate. I honestly don't, but what I'm saying is that we would have the opportunity not to seek repayment or not seeking repayment of marital assets, but to pursue damages, some of which might be the expense of defending against efforts to reach and seek non-marital assets to garnish wages of Mr. Efron to attach . . . We have your argument, Mr. Eslander. Thank you. Mr. Lahey? May it please the Court, Gus Lahey on behalf of the Appellees. Your Honor, Mr. Efron is the classic state court loser who 20 years ago had a order entered against him and now seeks to relitigate this entire issue before the Federal District Court here in Miami and before Your Honors. Your Honors, while we recognize that the Rooker-Feldman doctrine should be rarely applied, the argument that the Behr opinion that was authored by Your Honors indicates that it should be rarely applied. After that opinion, the Rooker-Feldman doctrine has continued to be applied in numerous circumstances and in particular in circumstances such as these that deal with marital matters and money matters relating to marital matters such as alimony. The issue here, Your Honor, is that what Mr. Efron would have the Court believe is that he can never get a fair shake in Puerto Rico. It's that the entire system has to be corrupt in order for him to be able to make the claim that he's making. And that's almost an implausible claim on its face because you would have to have the clerks joining in on this conspiracy by assigning these matters to certain judges. You would have to have those judges talking to one another. You would have to have the appellate review judges who have reviewed this case on numerous occasions and found Mr. Efron in contempt also be confabulating with the judges of the original opinion. As a matter of fact, Mr. Efron was held in contempt on this particular matter as late as 2021. It's only when there's enforcement sought or vigorous attempts at enforcement sought within the Miami-Dade County Courts that this issue magically arises. With respect to paragraph 59 where he talks about assets that are being attached that are held in UBS or Santander Bank, are those attachments being done pursuant to the domestication of the foreign judgment? The UBS attachment was in Puerto Rico, Your Honor, and if we're going to be clear about what happened with the UBS case, what happened is that there was an attachment of those monies. Mr. Efron withdrew those monies knowing about the attachment and absconded with those monies. Ultimately, Ms. Efron had to, well, Ms. Candelario had to sue UBS Bank. She obtained an award, and that's wholly separate from any attachment against Mr. Efron. Mr. Efron has not paid that $50,000 for many, many, many, many years. The issues pending before Miami-Dade County are that there was a domestication of the judgment, which Mr. Efron appealed and lost. Then there was a partition case that was filed for the marital home, which became an asset of both of them and became subject to partition, and after that partition suit gets filed, shortly before the trial on that, we have this complaint being filed against Ms. Efron and her lawyer on a 1983 basis, but it's really the true intent of what Mr. Efron has behind this I think has been made abundantly clear, and I believe Your Honor has pointed it out, Judge Lagoa, Judge Grant, in the paragraph where it says that he seeks abrogation of the judgment. So this is really trying to dress up what is really . . . by enforcing the Puerto Rican orders. Judge, he never even attacked or mentioned that there was a . . . that the judgment was fraudulently obtained when the domestication was sought. It wasn't raised in the lower court. It wasn't raised at the Third District Court of Appeals. As a matter of fact, he confessed error at the Third District Court of Appeals and admitted that the order had to be domesticated in Florida. Why wasn't it raised at that point, saying that it wasn't validly obtained? It's only when things are being sought to be attached when there's . . . At the Third DCA, he didn't raise any conspiracy or corruption allegations? Not a one. As a matter of fact, he had to confess error and say that domestication was warranted, and he withdrew. The Third DCA lauded his attorney for confessing error and remanded to the trial court for domestication of the judgment. Do we have appellate jurisdiction if the motion for sanctions is still pending in the district court? Yes, you do, Your Honor. Yes, you do. Why do we have appellate jurisdiction if there are still matters to be resolved? Your Honor, because if Your Honor were to . . . The sanctions only arise if and when Your Honor or the court determines whether or not the appeal is valid. It could be subject to a separate appeal, but the district court decided to hold off on hearing anything in order to determine whether or not the district court order was valid in and of itself. In ExxonMobil, the Supreme Court, I think, suggested pretty strongly that in order for Rooker-Feldman to apply, the case would have to be pretty similar to Rooker or Feldman, and I take it you don't think that this case is? Your Honor, I think that the . . . Or you do think that this case is, I should say. I think that this case is because what they're actually seeking . . . They're saying, well, we're seeking money damages. There's a slew of cases that we've cited in our brief that say that that's really irrelevant when in actuality what you're really seeking disguised as money damages is the abrogation or the undoing, and I think that's the term that was used in Rooker-Feldman itself when you're seeking to undo the underlying judgment or order of a state court proceeding. They want money damages that are probably pretty similar to, pretty equivalent to, what he's had to pay based on the Puerto Rico decision, right? Because that's all he would ever be entitled to. Otherwise, what has he suffered? What damages has he suffered? As a matter of fact, his damages that he suffered are very small and probably even barred by the statute of limitations given the fact that he hasn't paid in decades. I will say in Behr, we were pretty clear that the fact that there may be other defenses available doesn't mean that Rooker-Feldman applies, right? We don't just say, well, it's kind of complicated and there are probably other reasons this doesn't go forward, so we'll apply Rooker-Feldman. I think before Behr, I, for one, saw a lot of that from district courts. I've seen less of it since then. I understand and I don't disagree with the proposition that Your Honor is stating. I'm just saying that there are alternative bases that also support the court's underlying finding in this case. The court looked at this from a factual perspective, as it's required to do, and did so. And just even showing further that Mr. Efron is always litigating however he can is just the inference that by indicating that in the order that Mr. Efron was seeking a pound of flesh, all of a sudden the court and Judge Martinez are anti-Semitic and against him as well. Your Honor, he can't accept the fact that he lost in that case, that he's required to pay these monies, and he just refuses to do so. I don't know if Your Honors have any questions that I can answer. I'm happy to do so. I don't want to belabor the point. We have your arguments. Thank you, counsel. Thank you very much, Your Honor. Thank you. Mr. Ostlander, you've reserved some time for rebuttal. Yes, thank you, Your Honor. This case is clearly not Rooker and it's clearly not Feldman because we are not seeking to reverse . . . we are not asking the Federal District Court to reverse the judgment. And that judgment in Puerto Rico, what its relief is, is to be awarded $50,000 monthly in marital assets as an advance on the appreciation of those common property assets. We're only seeking, as compensatory damages, the expenses and costs, defense of having to deal with the effort to go after non-marital assets. So, I mean, yes, Your Honor, this case may be close. But it is not Rooker. It's not Feldman. It falls under the compound equation set forth in ExxonMobil, which Your Honor followed, which the Court followed with precision and bear, which is that it's not only when you have effectively what used to be considered the inextricably intertwined test of issues. It's when you're also seeking as relief to vacate that state court judgment. This is not that. I know the Court has that argument. I want to say one other point, though. Counsel references, and I think it's the marriage case and another district court case, that said in footnotes that monetary damages may also be an effective way to vacate a judgment. But the district court was effectively, with due respect to it, out on a limb there. It was the same judge saying it twice because the footnote offers no case law support whatsoever from this court or otherwise. And there are so many Rooker-Feldman cases out there. Obviously, fewer post-ExxonMobil. But in researching this case, I did not come across one where an appellate court said that pursuing money damages for a separate civil rights violation was in any way, shape, or form an effort to reverse the state court judgment. Paragraph 73. Condelario and Peraio used the Aponte decision to induce the courts of Florida and Puerto Rico to issue orders that deprived Efron of his property without due process. And then for the next count, paragraph 82, Efron must litigate under the shadow of an illegally obtained ruling from Judge Aponte. And I think as we go on, we see that in each of these counts, the problem is the ruling. The problem is that the ruling is causing your client trouble, not that your client is separately seeking relief for things that happened during those proceedings. The issue, Your Honor, is that, of course, it is that quid pro quo that took place that is causing us the problem. But that quid pro quo, that non-judicial activity, is separate and distinct from the result reached by the state court judgment. With that, Your Honor, I'll close. I see I'm over. We would ask that the court reverse the 12B1 determination that Rupert Feldman applied and, of course, also deny the motion for sanctions. Thank you. Thank you, Mr. Auslander. The court will be in recess for 15 minutes. All rise. The court will be in recess for 15 minutes. The court will be in recess for 15 minutes. He's been through the ringer. Thank you. Good to see you again. Please be seated. This next case.